IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLEANCUT LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RUG DOCTOR, INC. and NATURE'S FINEST, LLC,<br><br>　　　　　　　Defendants. | **ORDER and MEMORANDUM DECISION**<br><br>Case No. 2:08-CV-836-TC<br><br>Judge Tena Campbell |

　　　　Plaintiff CleanCut LLC (CleanCut) has filed this lawsuit against Defendants Rug Doctor, Inc. and Nature's Finest, LLC (collectively "Rug Doctor"), alleging that Rug Doctor's accused product infringes the claims of CleanCut's patent, United States Patent No. 7,047,851 (the '851 Patent).

　　　　The invention of the '851 Patent is "a wick trimmer with a measuring foot that facilitates the effective cutting of a wick to an appropriate length." ('851 Patent, Ex. A to Compl. [Dkt. No. 2] at col. 2, ll. 54-56.) The '851 Patent has twenty-nine claims; claims 1, 3, 14 and 26 are independent claims.

　　　　The parties dispute the meaning of nine terms found in the claims: (1) base; (2) measuring foot; (3) rim; (4) debris tray; (5) about; (6) wherein said measuring foot thickness determines the length of a wick allowed to remain above a top surface of a candle upon trimming the wick; (7) bottom angle of [the first, second] cutting arm; (8) variable cutting strength; and (9) middle portion of [the first, second] cutting arm is angled between about 170º and about 175º.

ANALYSIS

A. Legal Standards

Claim construction is an issue of law for the court to decide. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc). The claims of a patent "define the invention to which the patentee is entitled the right to exclude." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claims terms "are generally given their ordinary and customary meaning." <u>Id.</u> (quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996)). A court is to determine "the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention, using the methodology in <u>Phillips</u>." <u>Felix v. Am. Honda Motor Co., Inc.</u>, 562 F.3d 1167, 1177 (Fed. Cir. 2009).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." <u>Phillips</u>, 415 F.3d at 1314.

The starting point for construing claim terms is the intrinsic evidence (the claims, the patent specification, and the prosecution history). <u>Id.</u> at 1313. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." <u>Vitronics Corp.</u>, 90 F.3d at 1583; <u>see also</u> <u>Phillips</u>, 415 F.3d at 1315. Courts may also rely on extrinsic evidence in construing claims. Extrinsic evidence is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." <u>Markman</u>, 52 F.3d at 980. "Within the class of extrinsic evidence, the court has observed that dictionaries and treatises can be useful in claim construction." <u>Phillips</u>, 415 F.3d at 1318.

With these principles in mind, the court turns to the disputed claims of the '851 Patent.

**B. Disputed Terms**

    1. Base

CleanCut's proposed construction: "the base is a portion of a cutting arm, the base is not as thick as the measuring foot, the base has a cutting edge, the base forms a portion of the debris tray, and the base is on top of the measuring foot when the trimmer is in a closed position." (Pl.'s Brief [Dkt. No. 118] at 10.)

Rug Doctor's proposed construction: "lower portion of the cutting arm that does not include a measuring foot." (Defs.' Brief [Dkt. No. 124] at 3.)

The court concludes that Rug Doctor's proposed construction is correct. Rug Doctor points out that the specification does not give a special definition for the word and its proposed construction is an ordinary and customary meaning whereas CleanCut's proposed construction adds limitations that are either not supported by the claim language, are redundant or are contrary to certain rules of claim construction.

The proposed limitation that the base requires a cutting edge is not found in all of the claims, significantly, not in independent claims 1 and 3. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Phillips, 415 F.3d at 1315.

CleanCut's proposed limitation "the base is not as thick as the measuring foot" is unnecessary. As discussed later in the court's construction of measuring foot, the language of the claims includes the limitation that "a measuring foot having a thickness that is greater than a thickness of said base." ('851 Patent, claim 1 at col. 4, ll. 52-53; claim 14 at col. 5, ll. 61-62; claim 26 at col. 6, ll. 50-52.) Adding this limitation would be redundant and would add nothing

to the construction of the term.  See Thomas & Betts Corp. v. Orbit Indus., Inc., No. CV 06-03689, 2007 WL 5685083, at *13 (C.D. Cal. June 14, 2007) (refusing to include limitations from the claim in the claim term definition because doing so would make the definition redundant); GSK Techs., Inc. v. Eaton Elect., Inc., Nos. 606CV358, 606CV360, 606CV361, 2008 WL 906713, at *4 (E.D. Tex. April 1, 2008) (same).

CleanCut proposes the requirement that the base include "a portion of the debris tray." But the independent claims state that the debris tray "comprises" a measuring foot, a top rim of the measuring foot, and the base.  It would be contrary to the claim language, then, to have the base include a debris tray.

Finally, CleanCut's argument that the specification teaches that the base be on top of the measuring foot when the trimmer is in a closed position is not persuasive.  In the court's view, CleanCut reads far too much into the specification.

2. Measuring Foot

The term appears in the four independent claims and in two dependent claims, 15 and 16.

CleanCut's proposed construction: "The measuring foot is a part of a cutting arm and is thicker than the base.  The measuring foot is between $1/8^{th}$ and $7/8^{ths}$ of an inch thick between the measuring foot's top surface and its bottom surface.  The top of the measuring foot forms a debris tray and there is a raised rim on the outside edge of the top of the measuring foot that keeps any wick trimmings from falling out of the debris tray.  The measuring foot has a cutting edge on the edge of the top surface that comes into contact with the bottom of the base's cutting surface." (Pl.'s Br. [Dkt. No. 118] at 13.)

Rug Doctor's  proposed construction: "portion of a cutting arm that does not include the base." (Defs.' Br. [Dkt. No. 124] at 5.)  The court accepts Rug Doctor's proposed construction.

The specification gives no special meaning for the term. Nothing in the language of the claims or the specification limits the measuring foot to the $1/8^{th}$ to $7/8^{ths}$ inch range proposed by CleanCut. And there is simply nothing in the specification nor the language of the claims that supports adding the other limitations proposed by CleanCut.

3. Debris Tray

The four independent claims of the '851 Patent contain the term. Independent claim 1 describes the debris tray as "receiving at a debris tray any portion cut from the wick, wherein the debris tray comprises said measuring foot, a top rim of said measuring foot, and said base." ('851 Patent, claim 1 at col 5, ll. 1-3.) Independent claim 3 is the same but adds the limitation "a debris tray configured to receive any portion off the wick. " (Id., claim 3 at col. 5, ll. 20-21.) Independent claim 14 is the same as claim 3 but with the added limitation "and a cutting edge formed along said base." (Id., claim 14 at col. 6, ll. 2-5.)   Independent claim 26 is the same as independent claim 3. (Id., claim 14 at col. 6, ll. 61-64.)

CleanCut's proposed construction: "the debris tray is the top surface of the measuring foot. The debris tray has a raised rim around the outside edge of the tray formed by a rim on the top of the measuring foot and by the base when the wick trimmer is in the closed position." (Pl.'s Br. [Dkt. No. 118] at 15.)

Rug Doctor's proposed construction: "a portion of the wick trimmer comprising the measuring foot, a top rim of the measuring foot, and the base." (Defs.' Br. [Dkt. No. 124] at 8.)

The specification states, "In yet another implementation, the measuring foot has a debris tray formed on the top portion of the measuring foot. The debris tray catches the wick after it is cut, leaving the candle uncluttered by old wick pieces." ('851 Patent at col. 1, ll. 56-59.) This implementation is shown in Figure 1, where the debris tray is described as "the debris tray **38** is

formed from a top rim portion **40** of the measuring foot **34** and a base **42** of the second cutting arm **32**." (<u>Id.</u> at col. 3, ll. 5-7.)

Because the specification makes clear that a debris tray on the top surface of the measuring foot is a feature of "another implementation," and not all implementations, the court concludes that it would be improper to include that limitation in the construction of the term. <u>See</u> <u>Phillips</u>, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

CleanCut proposes that the debris tray have a raised rim around the outside edge of the tray formed by a rim on the top of the measuring foot and by the base when the wick trimmer is in the closed position. Although it is not completely clear, the court concludes that CleanCut is arguing that the raised rim limitation is appropriate because the debris tray must be configured to receive the wick trimmings. Although the court agrees that the independent claims make clear that the purpose of the debris tray is to catch the trimmed portion of a wick, CleanCut's proposal goes further than required.

Rug Doctor's proposed construction does no more than recite the language of the claims. The court does not adopt this construction because it is redundant and would not be helpful.

As a consequence, the court does not accept either of the proposed constructions. The parties are to simultaneously submit other proposed constructions no later than ten days from the date of this order.

   4. <u>Rim</u>

The term appears in all four independent claims. In each claim, the rim is described as "a top rim of said measuring foot" (although in claim 1, the "said" is not present). The

specification sheds little light on the meaning of the term: "As can be seen in FIG. **1** the debris tray **38** is formed from a top rim portion **40** of the measuring foot" (id. at col. 3, ll. 5-6.); "FIG. **3** shows a top view of the first cutting arm **30**. This view highlights the top portion of the measuring foot **40** that forms the debris tray **38**" (id. at col. 3, ll. 30-33).

CleanCut's proposed construction: "The rim is a raised edge on the outside edge of the top of the measuring foot and the base when the wick trimmer is in a closed position that keeps any wick trimming from falling out of the debris tray." (Pl.'s Br. [Dkt. No. 118] at 17.)

Rug Doctor's proposed construction: "outer edge of top surface." (Defs.' Br. [Dkt. No. 124] at 9.)

The court is not satisfied with either construction. Although it appears that the rim is a top portion of the measuring foot that forms the debris tray, CleanCut's proposal adds extra elements without adequately explaining why the claims and the specifications support such additions. And Rug Doctor's proposed construction is not helpful and ignores the description of the term that is found in the intrinsic evidence.

As a consequence, the court does not accept either of the proposed constructions. The parties are to simultaneously submit other proposed constructions no later than ten days from the date of this order.

5. About

The term "about" does not appear in the independent claims but does in many of the dependent claims.

CleanCut's proposed construction: "approximately or almost." (Pl.'s Br. [Dkt. No. 118] at 19.)

Rug Doctor's proposed construction: "approximately [a particular measurement],

encompassing a range of measurements no greater than ± 1/2 of the most precise (i.e., smallest) decimal place in the measurement." (Defs.' Br. [Dkt. No. 124] at 10.)

The court agrees with CleanCut that the appropriate construction is "approximately or almost."

6. <u>Wherein Said Measuring Foot Thickness Determines the Length of a Wick Allowed to Remain Above a Top Surface of a Candle Upon Trimming the Wick.</u>

The court declines to construe the entire phrase as a single term because, in actuality, this phrase contains several terms.

The parties must, bearing in mind the ten-term limit imposed by the court (<u>see</u> Scheduling Order [Dkt No. 114] at 5), meet and select which terms from this phrase the court should construe. This submission, along with the parties' proposed constructions, is to be filed no later than ten days from the date of this order.

7. <u>Bottom Angle of [the First, Second] Cutting Arm</u>

This phrase is found in several dependent claims of the '851 Patent. Figure 5A of the specification shows the bottom angle of the first cutting arm (**60**). Figure 5B of the specification shows the bottom angle of the second cutting arm (**64**).

CleanCut's proposed construction of "the bottom angle of the first cutting arm": "the angle formed between the first cutting arm and the top surface of the measuring foot that measures between about 95° and about 115°." CleanCut's proposed construction of "the bottom angle of the second cutting arm": "the angle formed between the second cutting arm and the top surface of the base that measures between about 95° and about 115°." (Pl.'s Br. [Dkt. No. 118] at 24.)

Rug Doctor's Proposed construction: "an angle located on the second cutting arm that is

on or adjacent to the base, and an angle located on the first cutting arm that is on or adjacent to the measuring foot." (Defs.' Br. [Dkt. No. 124] at 14.)

The court accepts CleanCut's proposed construction except without the specific measurements. The specific measurements are found in the claims themselves, and to incorporate them into the construction would be redundant and add nothing to the construction.

Accordingly, the court's construction of "the bottom angle of the first cutting arm" is: "the angle formed between the first cutting arm and the top surface of the measuring foot." The court's construction of "the bottom angle of the second cutting arm" is: "the angle formed between the second cutting arm and the top surface of the base."

8. Variable Cutting Strength

This term appears in several of the dependent claims.

CleanCut's proposed construction: "the cutting force created along the cutting edge that is exerted by the wick trimmer and that is created by a difference in angle of about 0.25° and about 1.25° between a bottom angle of the first cutting arm and a bottom angle of the second cutting arm as they move to a closed position." (Pl.'s Br. [Dkt. 118] at 25.)

Rug Doctor's proposed construction: "a changeable ability to withstand force, deformation, pressure or stress." (Defs.' Br. [Dkt. No. 124] at 15.)

The words "cutting strength" are clearer and more easily understood than either party's proposed construction. But the specification does provide guidance that the court will include in its construction: "In another implementation, the wick trimmer comprises two arms that are connected together. Variable cutting strength is created along the cutting edge because the angles of the two arms are slightly different." ('851 Patent at col. 1, ll. 61-63.)

The court's construction: "Variable cutting strength is created along the cutting edge

because the angles of cutting arm one and cutting arm two are different."

       9.  <u>Middle Portion of [the First, Second] Cutting Arm is Angled Between About 170° and About 175º.</u>

      This phrase appears only in dependent claim 20.

      CleanCut's proposed construction: "a non-end section of the first cutting arm that has an angle between about 170° and 175°" and "a non-end section of the second cutting arm that has an angle between about 170° and 175°." (Pl.'s Br. [Dkt. No. 118] at 27-28.)

      Rug Doctor's proposed construction: "an angle on [the first, second] cutting arm, said angle located on or adjacent to the pin on the cutting arms that securely couples the first and second cutting arms." (Defs.' Br. [Dkt. No. 124] at 16.)

      Both parties recognize that the phrase is largely self-explanatory. In fact, the court believes that the proposed constructions are not as clear as the claim term itself. Furthermore, the limitations in CleanCut's proposal are contained in the claim and would add nothing to the construction.

      If the parties believe that the term requires additional construction, the court would add after the term this sentence drawn from the specification: "The angular configuration allows the first cutting arm and the second cutting arm to overlap so that the pin can securely join or couple the two cutting arms." (<u>See</u> '851 Patent at col. 3, ll. 16-19.)

      The parties must meet and agree on whether the court should add the above sentence after the term. This decision, along with the parties' proposed constructions, is to be filed no later than ten days from the date of this order.

SO ORDERED this 18th day of October, 2011.

BY THE COURT:

/s/ Tena Campbell
_____
TENA CAMPBELL
United States District Judge