IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLEANCUT, LLC,<br><br>                    Plaintiff,<br><br><br>vs.<br><br><br>RUG DOCTOR, INC. and NATURE'S FINEST, LLC,<br><br>                    Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:08-cv-836 |

Plaintiff CleanCut, LLC (CleanCut) has filed this lawsuit against Defendants Rug Doctor, Inc. and Nature's Finest, LLC (collectively "Rug Doctor"), alleging that Rug Doctor's accused product infringes the claims of CleanCut's patent, United States Patent No. 7,047,851 (the '851 Patent). The invention of the '851 Patent is a device for trimming the wicks on candles, specifically: "a wick trimmer with a measuring foot that facilitates the effective cutting of a wick to an appropriate length." (Compl. Ex. A, at col. 2, ll. 54-56, Dkt. No. 2.)

On October 19, 2011, the court issued an order and memorandum decision concerning the construction of nine terms found in the claims. (Dkt. No. 131.) The court construed the meaning of five of the disputed terms, but ordered additional briefing on the remaining four terms. After careful consideration of the parties' memoranda and a hearing on February 24, 2012, the court now issues its ruling on the construction of the remaining terms.

**ANALYSIS**

The court ordered additional briefing on the terms: 1) debris tray; and 2) rim.  In addition, the court refused to construe the term: 3) wherein said measuring foot thickness determines the length of the wick allowed to remain above a top surface of a candle upon trimming the wick. The court found that this phrase consisted of several terms and ordered that the parties select specific terms from the phrase to construe.  The parties chose: a) determines; and b) top surface of the candle.  Finally, the court proposed an additional sentence to the term: 4) middle portion of [the first, second] cutting arm is angled between about 170° and about 175°.  The court suggested adding to the definition the sentence: "The angular configuration allows the first cutting arm and the second cutting arm to overlap so that the pin can securely join or couple the two cutting arms."  Since neither party objected to this language, the court finds that the additional sentence is part of the construction of this term.

The court now turns to the disputed terms.

1. <u>Debris Tray</u>

The four independent claims of the '851 Patent contain the term.  Independent claim 1 describes the debris tray as "receiving at a debris tray any portion cut from the wick, wherein the debris tray comprises said measuring foot, a top rim of said measuring foot, and said base." ('851 Patent, claim 1 at col. 5, ll. 1-3.)  Independent claim 3 is the same but adds the limitation "a debris tray configured to receive any portion off the wick."  (<u>Id.</u>, claim 3 at col. 5, ll. 20-21.) Independent claim 14 is the same as claim 3 but with the added limitation "and a cutting edge formed along said base."  (<u>Id.</u>, claim 14 at col. 6, ll. 2-5.)  Independent claim 26 is the same as independent claim 3.  (<u>Id.</u>, claim 14 at col. 6, ll. 61-64.)

2

CleanCut's proposed construction: "the top portion of the measuring foot, the top rim portion of the measuring foot and the base."

Rug Doctor's proposed construction: "a portion of the wick trimmer comprising the measuring foot, a top rim of the measuring foot, and the base."  Rug Doctor acknowledges that its definition is merely a recitation of the claim language, but states that it cannot envision any other definition that would be helpful to the jury.  As a result, Rug Doctor proposes that the court refrain from defining the term "debris tray."

The court agrees with Rug Doctor and declines to provide a definition for the term. Although CleanCut's proposed construction adds the limitation that the debris tray is the "<u>top portion</u> of the measuring foot" (emphasis added), such limitation is not in the claim language. The rest of CleanCut's proposed construction merely repeats the definition of "debris tray" that is provided by the claim language itself.  As Rug Doctor notes, such definition is redundant and not helpful to a jury.

The court finds that the term "debris tray" is already adequately defined by the patent claims and that there is no need to provide additional construction.

2. <u>Rim</u>

The term appears in all four independent claims.  In each claim, the rim is described as "a top rim of said measuring foot" (although in claim 1, the "said" is not present).  The specification refers the reader to the accompanying drawings for additional information: "As can be seen in FIG. **1** the debris tray **38** is formed from a top rim portion **40** of the measuring foot" (<u>id.</u> at col. 3, ll. 5-6).

CleanCut's proposed construction: "a raised edge on the outside edge of the top of the

measuring foot."

Rug Doctor's proposed construction: "uppermost peripheral surface"; or, if the term peripheral would be confusing to a jury, "uppermost outer surface."

The court accepts CleanCut's proposed construction.  The requirement that the rim is "a raised edge" does not add any additional limitations to the claims because the drawings clearly show that the rim is raised.  See, e.g., Texas Inst. Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (holding that the contention that the claim element "a plurality of conductors arranged substantially parallel to one another" is met so long as the accused device contains any two conductors that are substantially parallel to one another must fail, since "the specification,  the drawings," and witness testimony all require that each conductor be substantially parallel to all the other conductors used in the device) (emphasis added).

Because of the guidance provided by the drawings, the court finds that the intrinsic evidence supports CleanCut's proposed construction of "rim" as "a raised edge on the outside edge of the top of the measuring foot."

3.  Wherein Said Measuring Foot Thickness Determines the Length of a Wick Allowed to Remain Above a Top surface of a Candle upon Trimming the Wick

The court ordered the parties to choose specific terms from this phrase to construe.  The parties chose the terms "determines" and "top surface of the candle."

a.  Determines

The term "determines" appears in each independent claim of the patent and in the patent's Abstract, which states that the patent is for "a wick trimmer with a measuring foot that facilitates the effective cutting of a wick to an appropriate length.  The wick trimmer has two arms and a

4

measuring foot connected to the second arm that determines the length of a wick protruding from the top portion of a candle."

CleanCut's proposed construction: "facilitates or guides."

Rug Doctor's proposed construction: "fixes conclusively."

The court finds that neither construction adequately conveys the sense of the term "determines" as it is used in the patent that would be understood by a person of ordinary skill in the art.  While "guides" strays too far from the ordinary meaning of the term, the court finds that Rug Doctor's inclusion of the word "conclusively" adds a severity to the term that is not present in the patent specification or claim language.

Instead, the court adopts the construction: "fixes or establishes."

       b.  <u>Top Surface of the Candle</u>

The term "top surface of the candle" is present in each of the independent claims.  In addition, the patent specification identifies reference number 74 of Figure 6 as being the top surface of the candle.

CleanCut's proposed construction: "the top surface of a candle that is proximate to a wick."

Rug Doctor's proposed construction: "the uppermost surface of the wax portion of the candle."

The court adopts CleanCut's proposed construction of the term.  The court finds that the addition of the phrase "proximate to a wick" does not add any limitations that are not found in the patent already, because Figure 6 makes clear that the "top surface of the candle" refers to the portion of the candle that is near the wick.  If, for instance, the overall surface of the candle were

5

concave, such that the wax nearest the wick was lower than the wax at the outer edge of the candle, Figure 6 demonstrates that the "top surface of the candle" is that portion of the wax in proximity to the wick.

    4.  <u>Middle Portion of [the First, Second] Cutting Arm Is Angled Between About 170° and About 175°</u>

As noted above, the court adds the following sentence to this phrase to aid in the construction of the term: "The angular configuration allows the first cutting arm and the second cutting arm to overlap so that the pin can securely join or couple the two cutting arms."

SO ORDERED this 16th day of March, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge

6